IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 2:18-cr-00021-CB-1 |
| | : | |
| | : | |
| v. | : | Filed Electronically |
| | : | |
| | : | |
| ERNEST JOHN GILL, | : | |
| | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM IN AID OF SENTENCING

AND NOW, comes the defendant Ernest J. GIll, by and through his attorney

Ryan M. Tutera, Esquire who files the following Memorandum in Aid of Sentencing:

The defendant, Ernest J. Gill (hereinafter "Mr. Gill"), incorporates the facts set forth in

the Presentence Investigation Report and his objections to the presentence investigation report.

Additionally, Mr. Gill asks the Court to consider the information and arguments contained

herein in fashioning the appropriate sentence in this case.

## I. Legal Analysis

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court restored the

tremendous discretion that sentencing courts possessed prior to the promulgation of the

sentencing guidelines. Gall v. United States, 522 U.S. 38, 128 S.Ct.586 (2007). Largely as a

result of the Supreme Court's pronouncements in Gall and Kimbrough v. United States, 522

U.S. 85, 128 S.Ct. 558 (2007), the sentencing options available to district court judges have

"significantly broadened."  United States v. Moon, 513 F.3d 527, 544 (6th Cir. 2008), quoting

Gall, 128 S.Ct. at 602.  As a direct result of these rulings, District Courts no longer must follow

the strictures of the guidelines and moreover are not required to even presume that the

guidelines provide an appropriate sentence in a given case.

 The "reasonableness" of a sentence is the controlling query and it further held that any

sentence imposed on a defendant, whether below, above or within the sentencing guidelines, is

to be reviewed "under a deferential abuse-of-discretion standard."  Gall, 128 S.Ct. at 598.   As

set forth in United States v. Russell, 564 F.3d 200, 203 (3ʳᵈ Cir. 2009), appellate courts must

first

> ensure that the district court committed no significant procedural error in arriving at its
> decision[.] United States v. Wise, 515 F.3d 207, 217 (3ʳᵈ cir. 2008).  Second, "[i]f we
> determine that the district court has committed no significant procedural error, we then
> review the substantive reasonableness of the sentence[.]" Id. at 218. With respect to the
> first inquiry, a district court commits significant procedural error by, *inter alia*, failing to
> calculate (or improperly calculating) the Guidelines range, treating the Guidelines as
> mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on
> clearly erroneous facts, or failing to adequately explain the chosen sentence[.]  Gall v.
> United States, 552 U.S. 38, 128 S.Ct. 586, 597, 169 L. Ed. 2d 445 (2007), quoted in
> Wise, 515 F.3d at 217.

 If there is no procedural error, an appellate court must "then, at stage two, consider its

substantive reasonableness." United States v. Tomko, 562 F.3d 558, 567 (3ʳᵈ cir. 2009) citing

Levinson, 543 F.3d at 195.  Substantive review focuses not on one or two factors, but on the

totality of the circumstances. Id. citing Gall, 128 S. Ct. at 597; United States v. Howe, 543 F.3d

128, 137 (3d Cir. 2008).  Citing Rita v. United States, 551 U.S. 338, 127 S.Ct. 2456, 169

L.Ed.2d 203 (2007), the Gall Court explained that a sentencing court "should begin all

sentencing proceedings by correctly calculating the applicable Guidelines range".  128 S.Ct. at 596.  See also Kimbrough, supra.  The Third Circuit has recognized this stricture.  United States v. Smalley, 517 F.3d 208, 211 (3rd Cir. 2008).  In Gall, noting that the sentencing guidelines should only be the "starting point" and the "initial benchmark" of a sentencing proceeding, the Court noted that the Guidelines are not the only consideration.  Id.  Next, "after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party."  128 S.Ct. at 596.  In doing so, however, a sentencing court is not permitted to presume that the Guidelines range is reasonable.  128 S.Ct. at 596-597.  The sentencing judge "must make an individualized assessment based on the facts presented" at sentencing.  128 S.Ct. at 597.  If the sentencing judge decides that a sentence outside the applicable Guideline range is justified, the sentencing judge "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.  Id.  Continuing on, the Gall Court explained that a sentencing court must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.  Id.; see Wise, 517 F.3d at 215-216 (reiterating Gall sentencing analysis).  In United States v. Gunter, 462 F.3d 237, 246 (3rd Cir. 2006), the Third Circuit interpreted Booker to require a district court to comply with the following three steps:

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker;

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account the Third Circuit's pre-<u>Booker</u> caselaw, which continues to have advisory force; and

(3) Finally, district courts are required to exercise their discretion by considering the relevant §3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence.

See also <u>Tomko</u>, 562 F.3d at 567; <u>United States v. Levinson</u>, 543 F.3d 190, 194-195 (3rd Cir. 2008); United <u>States v. Charles</u>, 467 F.3d 828, 830-31 (3rd Cir. 2006); <u>United States v. Jackson</u>, 467 F.3d 834, 837 (3rd Cir. 2006).

These three factors, while not identical, are consistent with the considerations enunciated in <u>Gall</u> and continue to guide sentencing courts within the Third Circuit.  <u>Smalley</u>, 517 F.3d at 215; <u>Wise</u>, 517 F.3d at 216.

A sentencing court's failure to correctly calculate the correct guideline range "thwarts" reasonableness review and taints the remaining sentencing analysis.  <u>United States v. Ali</u>, 516 F.3d 205, 214 (3rd Cir. 2008).  A sentencing court must correctly calculate the correct offense level, criminal history category, enhancements and sentencing range. <u>Langford</u>, 516 F.3d at 213.

After calculating the appropriate sentencing guidelines range, a sentencing court should also consider any motions for departure. Such a motion is distinct from a request for a "variance" from a sentencing guideline range.  See <u>United States v. Vampire Nation</u>, 451 F.3d 189, 195 (3rd Cir. 2006) (A departure is based on the sentencing guidelines. A variance is based

on consideration of the §3553(a) factors).  See also <u>Gunter</u>, 462 F.3d at 247, n. 10.   As set forth

in <u>United States vs. Fumo</u>, 655 F.3d 288, 317 (3rd Cir. 2011):

> There are "two types of sentences that diverge from the original Guidelines range…A traditional sentencing 'departure' diverges…from the originally calculated range 'for reasons contemplated by the Guidelines themselves.' In contrast, a 'variance' diverges… from the Guidelines, including any departures, based on an exercise of the court's discretion under § 3553(a)." <u>United States v. Floyd</u>, 499 F.3d 308, 311 (3d Cir 2007) (internal citations omitted). This distinction is more than mere formality. "Although a departure or a variance could, in the end, lead to the same outcome . . . it is important for sentencing courts to distinguish between the two, as departures are subject to different requirements than variances." <u>Id.</u> "[D]istrict courts should be careful to articulate whether a sentence is a departure or a variance from an advisory Guidelines range." <u>United States v. Vampire Nation</u>, 451 F.3d 189, 198 (3d Cir. 2006).

   In <u>Kimbrough</u>, the Supreme Court explained that a sentencing court's decision to adopt

an offense level outside of the guidelines is permissible

> when the sentencing judge finds a particular case 'outside the heartland' to which the Commission intends individual Guidelines to apply.  <u>Rita</u>, 551 U.S.at 2461.
> 128 S.Ct.at 575.

   The "heartland" to which the <u>Kimbrough</u> Court alluded, is specifically described in the

Guidelines:

> [t]he Commission intends the sentencing courts to treat each guideline as carving out a "heartland", a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted…

   <u>See</u> <u>United States Sentencing Guidelines</u>, Chapter 1, Part A 4(b); <u>United States v. Baird</u>,

109 F.3d 856 (3rd Cir. 1997); see also <u>United States v. Ali</u>, 508 F.3d 136, 147-148 (3rd Cir.

2008)

As long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, a reviewing court must affirm. United States v. Jones, 566 F.3d 353, 366 (3rd Cir. 2009) citing Wise, 515 F.3d at 218.  Where a district court decides to vary from the Guidelines' recommendations, an appellate court "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Tomko, 563 F.3d at 56, citing Gall, 128 S.Ct. at 597.

According to Gall, Booker and its related Third Circuit authority, in determining the minimally sufficient sentence the § 3353 (a) factors that must be considered by the Court include the following:

**§ 3353 Imposition of a Sentence**

(a) Factors to be considered in imposing a sentence-The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider-

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed-

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical

care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentences and the sentencing range established for; (omissions)

(5)     any pertinent policy statement; (omissions)

(6)     the need to avoid unwarranted sentence disparities among defendants with

similar records who have been found guilty of similar conduct;

(7)     the need to provide restitution to any victims of the offense.

## II. Applying *Gall* Factors to this Case

Mr. Gill requests that This Court grant a downward variance in this case and impose a

sentence below the 87-108 month guideline range and sentence the defendant with Offense

Level 23 [46-57 months].  Such a sentence would adequately address and balance the punitive

aspects of the sentencing guidelines for the crime committed, as it is slightly below the

mandatory minimum sentence (had Mr. Gill pleaded guilty to the distribution count) and

provide adequate assurances that the rehabilitative needs will also be addressed. See 18 U.S.C.

§§3553(a)(2)(A) through (D)

This Court is to first consider the sentencing guidelines as a starting point in fashioning

an appropriate sentence.  We can all agree the type of crime that is the subject of this

prosecution is reprehensible.  Mr. Gill agrees that this conduct is absolutely and unequivocally

wrong, immoral, and illegal.  Mr. Gill does not in any way attempt to minimize or deny his

culpability.

Mr. Gill argues, based on the above law, the advisory guideline range is considerably higher than what is necessary to achieve the interests of justice in this case. 87-108 months imprisonment for a first-time offender who has lived a life obeying the laws is considerably harsh and does not adequately consider the particular characteristics of the defendant or surrounding circumstances of this offense.

The Third and Second Circuit Courts of Appeals have held, that the child pornography guidelines are "fundamentally different from most and ... unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires." United States v. Dorvee, 616 F.3d 174, 184(2d Cir. 2010). See also, United States v. Jenkins, No. 14-4295-CR (2d Cir. 2017); See also United States v. Tutty, 612 F.3d 128, 133 (2d Cir. 2010) (directing the district court to "bear in mind that the 'eccentric' child pornography Guidelines, with their 'highly unusual provenance,' 'can easily generate unreasonable results' if they are not 'carefully applied.'")(internal citations omitted); United States v. Grober, 595 F. Supp.2d 382, 412 (D. N.J. 2008) ("[T]he Court joins thoughtful district court judges whose work has convinced them that the present guideline, 2G2.2, must be given less deference than the guidelines traditionally command."). In this case, Mr. Gill should be sentenced to significantly below the advisory guideline range because, based upon the reasoning in Kimbrough, Dorvee, and Grober, the child pornography guidelines are not the result of careful review of empirical data and national experience, mandate application of a number of enhancements which apply in nearly every case. According to the United States Sentencing Commission statistics for 2013, three of the specific offense characteristics that apply in this case, applied in the majority of federal child

pornography cases.  The use of a computer enhancement applied in 95.3% of cases; the depiction of a minor under the age of 12 applied in 96.1% of cases; the number of images enhancement applied 79% of cases. United States Sentencing Commission, "Use of Guidelines and Specific Offense Characteristics: Guideline Calculation Based" at p.40-41(Fiscal Year 2013).  Because the specific offense characteristics applicable in this case are applicable in nearly all child pornography cases, they do nothing to distinguish this offense from other defendants and offenses.  The applicable, and "essentially inherent" enhancements that "apply in nearly every case" should be discounted by this court.  See United States v. Grober, 624 F.3d 592, 597 (3d Cir. 2010); see also United States v. Dorvee, 616 F.3d 174, 187 (3d Cir. 2010)("[M]any of the § 2G2.2 enhancements apply in nearly all cases.").  In Grober, the Third Circuit held that sentencing courts may depart from the "draconian" child pornography guideline range in cases where they find a policy disagreement with U.S.S.G. 2G2.2. See Grober, 624 F.3d at 596, 609. In Grober, the Third Circuit considered the vast record developed at the sentencing hearing, where evidence was taken for twelve days.  After carefully reviewing the evidence, reading submissions, and hearing oral argument, the district court determined that it would vary from the advisory guideline range because it had a policy disagreement with 2G2.2. See id., 624 F.3d at 599-600.  Thus, the district court sentenced the defendant to the mandatory minimum term of confinement of 60 months for the receipt, possession, and transportation of child pornography. Id. at 596.  The guidelines, however, provided for a range of 235-293 months' incarceration. Id. at 599.  The Third Circuit upheld the district court's decision because the court provided a "sufficiently compelling explanation for its policy

concerns about 2G2.2 and its justification for imposing a sentence outside the range 2G2.2 recommended." Id. at 611.  The child pornography guidelines are not the result of a careful study and review of empirical evidence by the Sentencing Commission.  Indeed, the Sentencing Commission noted in a 2009 Report how many of the "dramatic[]" increases in the child pornography guidelines were as a result of politics and Congressional mandates. See United States v. Grober, 624 F.3d 592, 604 (3d Cir. 2010).

      Counsel draws the Court's attention to the facts and circumstances in this case.  Mr. Gill's interest in adult pornography started as a teenager and continued into his adulthood.  Mr. Gill does not have a history of child pornography viewership prior to this event.  Mr. Gill's one and only offense is the conduct for which he is about to be sentenced.

      The collection of illicit materials was considerably small compared (less than 400 images) to other similarly situated defendants.  Most interesting in this case was the low-tech method by which the evidence was viewed.  Mr. Gill did not even own a computer in his house. The tool utilized to access the content was a cell phone which contained a dropbox link where the evidence was found.  It can hardly be said that the evidence found on the phone was "highly structured" or complexly secreted so as to avoid detection.[1]  In other words, Mr. Gill is a very basic man who did not make any efforts to hide or conceal who used a crude device to view the

---

[1] See U.S. v. Reddinger, 2:17-cr-00112-CB where the United States Attorney's Office press release characterized the defendant's child porn downloads as "highly structured", and that he "deleted a lot of files" and that he searched for child porn once a week and that he had "probably a gross number" of child porn.  In total, that defendant had 2,932 images and 60 videos.  This Court sentenced that defendant to 63 months.

illegal material.  Moreover, he does not have the means to *produce* or *manufacture* child pornography in the traditional sense.

The day the search warrant was executed, Mr. Gill was at his residence and was cooperative when confronted by the law enforcement task force.  He admitted and confessed to being the owner of the Samsung Galaxy 7 phone and that he was the owner of the email accounts attached to the dropbox.  Subsequent to the arrest, Mr. Gill underwent three polygraph examinations (2 FBI and 1 private) and submitted to psychological counselling from Dr. Robert F. Coufal, Ph.D.[2]

The Dr. Coufal's report is the best indicator for opinions about Mr. Gill's sexual interests, not the government's opinions.  In the time since the indictment was filed, Mr. Gill underwent regular psychological counselling and evaluations.  Mr. Gill submitted to Millon Clinical Multiaxial Inventory-III and Abel Assessment for Sexual Interest and testing revealed "no indications of sustained interest in preteen children of either gender".  Moreover, Dr. Coufal's overall assessment is that among those in trouble for similar behavior, he is likely a low risk for recidivism.  The likelihood of reoffending is therefore extremely low and the same would justify a downward variance.[3]

---

[2] The parties have reached a stipulation that the report will be used at the sentencing hearing and may be referenced at the sentencing hearing without having to call the witness, Robert F. Coufal, Ph.D.

[3] United States v. White, 506 F.3d 635 (8th Cir. 2007) (affirming a downward variance in a distribution of child pornography case in which: there was only one instance of distribution; the defendant was an older man with a deteriorating medical condition; he had no criminal history; and a medical expert testified that the defendant posed a low risk of recidivism). (emphasis added)

At the current date of the filing of this document, Mr. Gill maintains a home with his wife, Robin, is a father to seven sons, step and biological, and is a grandfather to 13.  Mr. Gill maintained an excellent and consistent employment record with various trucking and hauling companies in the transportation and sanitation industries.  Mr. Gill has maintained a very good rapport with pre-trial services.  He has been on EHM for nearly two years, and although he is not entitled to credit for time served on the ankle bracelet, counsel avers that this is a good indicator of whether or not the defendant will recidivate and to date he hasn't.

Over the course of this case, the Gill family has suffered a tragedy.  His 2-month grandchild passed away from SIDS, another 16 year-old grandson committed suicide, and his mother-in-law was diagnosed with colon cancer.  His family, especially his wife, need him.

Lastly, Mr. Gill has successfully settled the restitution in this matter in good faith and as quickly as practicable.  He has agreed to pay $2,000.00per victim/claimant, with $1,200 up front at the time of sentencing for a total of $16,000.00 between the eight victim/claimants.

Counsel avers that with the appropriate mental health treatment and the stability of good home and family life, Mr. Gill can reenter society as a rehabilitated individual that paid his debt to society.  Make no mistake, Counsel is not asking This Court to do something inappropriate and overlook the seriousness of the crime, which we can all agree is serious.  Counsel however respectfully asks This Court to vary to a degree that will serve the interest of justice and that sends a message of deterrence for future defendants, which 48 months will accomplish. Counsel respectfully requests that This Court strongly consider the lack of criminal history, the characteristics of the defendant, the very amount of images compared to other cases, the family

circumstance, the report of Dr. Coufal and the character reference letters from those who know

Mr. Gill best.  Counsel asks This Court to pay close attention to the details in the

medical/psychological reports prepared by Dr. Coufal as these documents set forth the reasons

for the Court to grant a variance in this matter.

      For the foregoing reasons, Counsel for the defendant, Ernest J. Gill, submits that a

sentence within Offense Level 23, specifically 48 months, is a firm sentence and is sufficient,

but not greater than necessary, to achieve the purposes of sentencing.

                      Respectfully submitted,
                      s/ Ryan M. Tutera_____
                      Pa. ID #202334
                      Attorney for the Defendant

                      The Law Office of Ryan M. Tutera
                      2100 Law & Finance Building
                      429 Fourth Avenue
                      Pittsburgh, PA 15219
                      Ph: (412) 566-2660
                      Fax: (412) 391-8260